Regina Fisher v. Commissioner.
Fisher v. Commissioner
Docket No. 7520.
United States Tax Court
1947 Tax Ct. Memo LEXIS 214; 6 T.C.M. (CCH) 507; T.C.M. (RIA) 47132; May 7, 1947
*214 Transferee Liability. - Held, that respondent has failed to establish petitioner's liability, at law or in equity, as a transferee of the taxpayer. Herbert Kanon, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: This proceeding involves the asserted liability of petitioner as transferee of assets of her husband, Lewis Fisher, for income tax deficiencies and penalties totaling $7,995.67 determined and assessed against him for the years and in the amounts as follows: Year
Deficiency
50% Penalty
1930
$ 151.49
$ 75.75
1931
190.85
95.42
1932
3,014.55
1,507.28
1933
1,973.55
986.78
Totals
$5,330.44
$2,665.23
*215 The issue presented is whether respondent erred in determining that petitioner is liable as a transferee for the above set out taxes. No question is raised as to the correctness of the asserted deficiencies and penalties or as to their being tax liabilities of Lewis Fisher. Findings of Fact The petitioner and her husband, Lewis Fisher, reside at 7522 19th Avenue, Brooklyn, New York. The notice of transferee liability was mailed to petitioner on January 15, 1945. The above mentioned deficiencies and penalties, plus interest thereon, were duly assessed against Lewis Fisher on the special assessment list of February 1938 of the collector of internal revenue for the first district of New York, and on February 24, 1938, Lewis Fisher received "Notice and Demand" for payment thereof. Such assessment and demand for payment resulted from a revenue agent's examination of Lewis Fisher and his returns for the years 1930 through 1933, which examination was first started during the latter part of 1934 or early in 1935 and continued off and on thereafter. To date of the hearing on this proceeding such deficiencies, penalties, and interest remain unpaid despite the collector's continuous efforts *216 to collect such taxes from Lewis Fisher. On March 12, 1938, respondent mailed a 90-day deficiency notice to Lewis Fisher determining against him deficiencies, fraud penalties, and interest for the years 1930 to 1935, inclusive, and from such notice there was initiated before this Court the proceeding of Lewis Fisher, Docket No. 94247. In that proceeding this Court entered its Memorandum Opinion on October 13, 1943, approving the deficiencies involved for all years and finding that a part of each deficiency asserted against Lewis Fisher for each of the years 1930 to 1933 was due to fraud with intent to evade tax and, further, entered its Decision on October 14, 1943, redetermining the deficiencies and fraud penalties for the years 1930 to 1933, inclusive, in the same amounts as involved in this proceeding. No petition for review was filed. Upon application dated December 5, 1936 made by Lewis Fisher, then 49 years of age, and upon payment of $18,000 made by him out of his own funds, the New York Life Insurance Company issued a "Single Premium Retirement Annuity", Policy No. 160,106, dated December 9, 1936, in which Lewis Fisher was designated the annuitant of a life annuity of $217.80 *217 per month, commencing when he attained 65 years of age and his wife, Regina Fisher, was designated the beneficiary, but not irrevocably. The policy sets forth schedules for optional annuity payments, death benefits, and cash surrender values, and provides, inter alia: for annuity payments to be made to an assignee if the annuitant be living; for payment of the cash surrender value thereof upon surrender of the policy and all claims thereunder; for assignment of the policy, but the "Company assumes no responsibility for the validity of any assignment"; for the change of any beneficiary by the annuitant unless otherwise provided by indorsement or "unless there be an existing assignment of this Policy". On December 10, 1936, Lewis Fisher executed before a New York notary public and on the Insurance Company's standard printed form, an assignment which provided, in part, as follows: "FOR VALUE RECEIVED, I, being of legal age, hereby assign and transfer unto Regina Fisher of 7522 - 19th Avenue, Brooklyn the Policy of Insurance known as Retirement Annuity No. 160,106 issued by the NEW YORK LIFE INSURANCE COMPANY upon the life of Lewis Fisher, of Brooklyn, NY and all dividend, benefit *218 and advantage to be had or derived therefrom, subject to the conditions of the said Policy, and the Rules and Regulations of the Company, * * *" Such assignment was delivered to the home office of the New York Life Insurance Company, as required by the terms of the policy and the assignment form. No consideration in money or money's worth passed from Regina Fisher to Lewis Fisher for such assignment. On the date of the assignment that policy had a cash surrender value of $16,794. Subsequent to such assignment Lewis Fisher kept the policy in his possession. In December 1936, after making payment of the single premium of $18,000 on the above-mentioned retirement annuity policy No. 160,106, Lewis Fisher had remaining from $500 to $1,000 cash on hand and no other property or assets, except one share of stock in the Continental Shoe Manufacturing Company, Inc., which was organized in 1919 and the remaining capital stock of which was owned by Regina Fisher. That company's business was managed by Lewis Fisher who was paid an annual salary of $8,000 during 1936. Prior to its going out of business in the latter part of 1937, that company paid Lewis Fisher a salary of $6,000 for that year. *219 During 1936 and 1937 Lewis Fisher gave his wife money for household expenses. During and subsequent to 1938 Lewis Fisher has worked, but his financial situation has been such that he possessed only small sums of money as earned, except in the year 1940, upon the surrender of the policy for cash, as hereinafter set out. On or about June 19, 1940, Lewis and Regina Fisher went to the New York office of the New York Life Insurance Company where both signed a request for the cash surrender value of the retirement annuity policy No. 160,106, and they surrendered that policy to the company. The insurance company issued its check, dated June 19, 1940, in the amount of $18,401.89, payable to the order of Lewis Fisher and Regina Fisher in full settlement of all claims under that policy. Under the insurance company's rules and regulations the assignment of December 10, 1936 was effective in transferring all benefits under the policy from Lewis Fisher to Regina Fisher and, thereafter, the company would not accept surrender of the policy by Lewis Fisher alone and would not make payment of the cash surrender value to him alone, and, further, the company would thereafter make payment of the cash *220 surrender value to Regina Fisher upon her surrender of the policy or her filing a bond in lieu of the policy. However, in pursuance of its practice and for its own protection against any further claims under the policy, the insurance company required that both Lewis Fisher and Regina Fisher jointly sign the request for the cash surrender value thereof and, for the same reason, it issued its check payable to the order of both of them. Upon receipt of the above-mentioned check of the New York Life Insurance Company for $18,401.89 Lewis Fisher and Regina Fisher each endorsed it and also their son-in-law, Samuel Gell, and the latter, on June 20, 1940, deposited the same to his bank account. On the same date, Samuel Gell issued his personal check, drawn on the Bensonhurst National Bank, Brooklyn, New York, payable to the order of Lewis Fisher, in the sum of $18,401.89. Both Lewis Fisher and Samuel Gell endorsed the latter's check which was cashed at his bank on June 22, 1940 by Lewis Fisher alone, who received the face amount thereof in cash money which he spent. Lewis Fisher did not give any part of such money to his wife, Regina Fisher. The petitioner is not liable, at law or in equity, *221 as a transferee of the taxpayer in respect of the taxes involved herein. Opinion This proceeding involves the issue of whether, under the provisions of section 311 (a) (1) of the Revenue Acts of 1928 and 1932, the petitioner is liable, at law or in equity, as a transferee of property of the taxpayer, Lewis Fisher, in respect of the income tax, including interest and additions to the tax as provided by law, imposed upon the taxpayer for the years 1930 to 1933, inclusive. Petitioner raises no issue or contention as to the correctness of the deficiencies and penalties determined against Lewis Fisher for those years, nor as to the fact that such taxes remain unpaid, but she denies liability therefor as a transferee of Lewis Fisher. The petitioner contends that there was no valid, effective transfer of the annuity policy to her on December 10, 1936, so that nothing of value was transferred to her; that, as assignee of the policy, she obtained only the right to have the terms of the policy thereafter remain unchanged except by her consent; that if the assignment was a valid transfer of an asset of the taxpayer it did not render him insolvent at that time; and that she did not receive *222 any portion of the proceeds of the policy when it was surrendered for cash in June 1940, at which time by reason of the receipt of such cash by the taxpayer he had ample funds for payment of the taxes due. By statute, the burden of proof is placed upon respondent. He contends that he has met such burden in that the testimony and documentary evidence submitted by him establish: a liability of the taxpayer for income taxes and penalties which remain unpaid; a transfer of assets from the taxpayer to petitioner without a full and adequate consideration; a value for such assets in excess of the taxes involved; insolvency of the taxpayer by reason of the transfer; and a continuing insolvency of the taxpayer up to and including the times respondent attempted, without success, to collect the taxes from him. The first question to be determined is that involving the insolvency of the taxpayer, Lewis Fisher, for that is the crux of the case. There is no proof that he was insolvent prior to his assignment of the single premium retirement annuity policy to petitioner, Regina Fisher, on December 10, 1936. Accordingly, and assuming for the purpose of this discussion that the assignment operated *223 to transfer all rights in that policy from Lewis to Regina, our primary question on the matter of insolvency is whether it is established herein as a fact that Lewis was rendered insolvent at that time by reason of such assignment. If he was not, then the respondent has failed to meet his burden of proof, for it is not sufficient merely to show insolvency of the taxpayer at a subsequent date. ; affirmed ; ; affirmed ; ; . In determining the question of the taxpayer's insolvency, his liability for the taxes involved in this proceeding must be considered, although neither finally determined nor assessed at the time of the assignment of the policy. ; ; ; and In our opinion, the respondent has failed to establish that the taxpayer was rendered insolvent by reason of his assignment of the insurance policy *224 to Regina on December 10, 1936. While it is true that after the taxpayer had paid out $18,000 for the purchase of the annuity policy on December 9, 1936 and after the assignment thereof to Regina on December 10, 1936 he had remaining from $500 to $1,000 cash on hand and no other assets, except one share of stock in the Continental Shoe Manufacturing Company, Inc., that is not sufficient to support a definite finding of insolvency by reason of such transfer, for there is no proof whatever as to the value of such stock. We may not assume that such stock was worthless for at that time the company was a going concern paying the taxpayer [Lewis Fisher] an annual salary of $8,000; nor may we assume the extent of the value thereof. The circumstances therefore leave us in the position of not being able to definitely determine, on this record, the value of the assets which the taxpayer [Lewis Fisher] possessed immediately after the transfer and therefore we can not find that such transfer rendered him insolvent at that time. In view of our above conclusion it is unnecessary to consider the contention of respondent that Lewis Fisher continued to be insolvent after the assignment of the *225 policy to his wife. On this record, we find that respondent has failed to establish petitioner's liability, at law or in equity, as a transferee of Lewis Fisher, for the taxes involved herein. Decision will be entered for the petitioner.